**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| CARLTON CLARKE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 10-1083 (RC) |
| | : | | |
| v. | : | Re Documents No.: | 12, 21 |
| | : | | |
| WASHINGTON METROPOLITAN AREA | : | | |
| TRANSIT AUTHORITY, | : | | |
| | : | | |
| Defendant. | : | | |

<u>**MEMORANDUM OPINION**</u>

**GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING THE
PLAINTIFF'S MOTION FOR SANCTIONS**

## I. INTRODUCTION

This matter comes before the court on the defendant's motion for summary judgment and the plaintiff's motion for sanctions.  The *pro se* plaintiff brings suit against the Washington Metropolitan Area Transit Authority ("WMATA"), alleging that he was the victim of unlawful discrimination on the basis of his race and gender.  Because the plaintiff fails to cast any doubt upon WMATA's legitimate, non-discriminatory reasons for firing him, the court will grant the defendant's motion for summary judgment.  For the reasons explained below, the court will deny the plaintiff's motion for sanctions.

## II. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

The facts in this matter are largely undisputed.  The plaintiff, a black male, was hired as an Accounts Receivable Supervisor by WMATA in October 2007.  Def.'s Mot. at 2.  Under WMATA's personnel procedures, the plaintiff was placed on a "probationary status" for one year following his first day of work.  *Id.* at 4.  The plaintiff was hired to replace another employee, Warren Woodward, who had earlier held the Accounts Receivable Supervisor

position on a temporary basis; Woodward was not selected as the permanent supervisor due to his frequent tardiness. Def.'s Stmt. of Facts ¶ 2. The plaintiff was supervised by Huiling Wang. *Id.* ¶ 4.

Of the 80 days the plaintiff was employed with WMATA, computerized records show that the plaintiff arrived late 48 times. Def.'s Mot., Ex. C at 2–6. A series of emails reveal that the plaintiff was asked not to be late on more than one occasion. In December 2007, Ms. Wang emailed the plaintiff to write: "You need to come to work on time. Especially as a supervisor, you need to be a good example. If you are late, you need to call me. Thank you." *Id.*, Ex. B–2 at 2. The plaintiff admitted that he had repeatedly shown up late and responded: "I will make sure not to be late in the future." *Id.* The plaintiff's late arrivals continued, however, and in January 2008 Ms. Wang again warned plaintiff to arrive punctually. *Id.*, Ex. B–1 ("Again, please come on time. Be a good example to your staff.").

The defendant also claims that the plaintiff's work performance was unsatisfactory. In particular, the plaintiff indicated that he was familiar with PeopleSoft, a software system used by WMATA employees. Def.'s Mot. at 3; *Id.* Ex. A (Wang Aff. ¶ 5). In January 2008, the plaintiff called Ms. Wang to ask how to perform certain functions within the PeopleSoft system. Def.'s Mot. at 4. Ms. Wang responded by expressing concerns about his lack of familiarity with the system and frustration with his tenure at WMATA overall. *Id.* On February 15, 2008, Ms. Wang terminated the plaintiff. Wang Aff. ¶ 10. The plaintiff filed suit in June 2010, alleging that his firing was motivated by discrimination on the basis of race and gender.[1] WMATA has now filed a motion for summary judgment. The plaintiff has also filed a motion for sanctions based on the alleged spoliation of evidence.

---

[1] The plaintiff initially brought a claim for hostile work environment, but he has since indicated that he no longer wants to pursue this claim. *See* Pl.'s Opp'n at 2.

### III.  ANALYSIS

**A.  The Court Grants the Defendant's Motion for Summary Judgment**

**1.  Legal Standard for a Motion for Summary Judgment**

Summary judgment may be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if sufficient evidence exists such that a reasonable jury could return a verdict for the non-moving party.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The moving party bears the initial responsibility of identifying those portions of the record which demonstrate the absence of any genuine issue of material fact.  *Id.* at 323; FED. R. CIV. P. 56(c)(1)(A) (noting that the movant may cite to "depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials").  In response, the non-moving party must similarly designate specific facts in the record that reveal a genuine dispute that is suitable for trial.  *Celotex*, 477 U.S. at 324.

On a motion for summary judgment, the court must "eschew making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-moving party, *Anderson*, 477 U.S. at 255.  Nevertheless, conclusory assertions offered without any evidentiary support cannot establish a genuine issue for trial.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### 2.  Legal Standard for a Title VII Discrimination Claim

Title VII prohibits employers from discriminating against their employees on account of

race, color, religion, sex, or national origin.  42 U.S.C. § 2000e–2.  Where, as here, the employer

has offered a non-discriminatory explanation for a materially adverse employment action, the

court need resolve only one question to adjudicate a motion for summary judgment: "Has the

employee produced sufficient evidence for a reasonable jury to find that the employer's asserted

non-discriminatory reason was not the actual reason and that the employer intentionally

discriminated against the employee on the basis of race, color, religion, sex, or national origin?"

*Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 494 (D.C.

Cir. 2008).  A plaintiff has "multiple ways" to cast doubt on the employer's asserted reason for

acting: for instance, the plaintiff may draw comparisons to others who are similarly situated, the

plaintiff may submit evidence suggesting that the employer has lied about the underlying facts,

or the plaintiff may suggest the employer failed to follow established protocol.  *Brady*, 520 F.3d

at 495.

### 3.  Racial Discrimination

The plaintiff claims that he was fired due to discrimination on the basis of his race.  The

defendant instead maintains that it had two legitimate, nondiscriminatory reasons for terminating

him: first, the defendant argues that the plaintiff arrived late to work on 48 of the 80 workdays

that he was employed by WMATA.  Def.'s Mot., Ex. C–1.  The defendant contends that the

plaintiff's tardiness continued despite the fact that he was warned to arrive on time on more than

one occasion.  *Id.*, Ex. B ¶ 3.  Second, the defendant maintains that the plaintiff's job

performance was unsatisfactory because he lacked familiarity with PeopleSoft, a software

program that was necessary for the job.  *Id.* ¶ 8.  These reasons are legitimate and

nondiscriminatory for the purposes of Title VII.  *Turner v. Shinseki*, 824 F. Supp. 2d 99, 116

(D.D.C. 2011) (tardiness); *Bowden v. Clough*, 658 F. Supp. 2d 61, 90–91 (D.D.C. 2009) (lack of technical job skills).  Because the defendant has offered a legitimate, nondiscriminatory reason for acting, *the prima facie* case drops out of the picture, and it falls on the plaintiff to submit evidence showing that the defendant's stated reasons for acting were pretext.  *Brady*, 520 F.3d at 493–94.

The plaintiff does not dispute that he often arrived to work late and that he was warned not to do so more than once.  He nevertheless puts forth several arguments to suggest that the defendant's stated reasons are merely pretext.  None have merit.  First, he asserts that on the frequent occasions that he was late, he was only tardy by 10 minutes or so.  Pl.'s Opp'n at 3.  Even if the plaintiff were correct, he concedes that he arrived late on a majority of the days he worked for WMATA.  Although the plaintiff may believe that his perpetual tardiness was not severe enough to warrant termination, Title VII does not allow "judicial micromanagement" of employers' business practices.  *Baloch v. Kempthorne*, 550 F.3d 1191, 1197 (D.C. Cir. 2008) (quoting *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1556 (D.C. Cir. 1997)); *Forman v. Small*, 271 F.3d 285, 291 (D.C. Cir. 2001) ("Consistent with the courts' reluctance to become involved in the micromanagement of everyday employment decisions, the question before the court is limited to whether [the plaintiff] produced sufficient evidence of . . . discrimination, not whether he was treated fairly . . . .").  The plaintiff does not dispute that *his* supervisor wanted him at his desk at 8:30 a.m., rather than 8:40 a.m. or later.  It is not this court's role to second-guess the wisdom of that managerial decision.

Second, the plaintiff argues that he was not required to show up until 9:00 a.m., not by 8:30 a.m. as the defendant alleges.  *See* Pl.'s Opp'n at 3.  The plaintiff's argument is belied by the record: WMATA's personnel policies state that the hours of business are 8:30 a.m. to 5:00

p.m.  *See* Def.'s Reply, Ex. A–1 at 2.  Employees could arrive at work at 9:00 a.m. only if they

submitted a formal request in writing that had been approved by the department head.  *Id.*  The

plaintiff has put forth no evidence of having made such a request.  Moreover, the plaintiff does

not dispute evidence that his supervisor, Ms. Wang, independently required him to be present by

8:30 a.m.  *See* Wang Aff. ¶ 4.  In sum, the plaintiff's argument fails to create a triable issue of

fact.  *See Walker v. England*, 590 F. Supp. 2d 113, 139 (D.D.C. 2008) (concluding that the

plaintiff's argument, when contradicted by record evidence, did not create a triable issue of fact).

       Third, the plaintiff argues that similarly situated white employees arrived late to work

without suffering similar consequences.  In general, a Title VII plaintiff may demonstrate pretext

by showing that his employer gave favorable treatment to similarly situated employees of a

different race.  *Brady*, 520 F.3d at 495; *Wicks v. Am. Transmission Co. LLC*, 701 F. Supp. 2d 38,

45 (D.D.C. 2010).  Yet to draw an apt comparison, the plaintiff must demonstrate that all

relevant aspects of his employment situation were "nearly identical" to those of the other

employees.  *See Royall v. Nat'l Ass'n of Letter Carriers*, 548 F.3d 137, 145 (D.C. Cir. 2008).

Here, the plaintiff alleges that Warren Woodward, a white employee, was often late but never

punished.  Pl.'s Opp'n at 3 (claiming that Mr. Woodward had a habit of arriving late, but that

"Ms. Wang had blatantly overlooked Mr. Woodward['s] tardiness in violating WMATA's arrival

policy for years with no form of disciplinary action taken against him.").  The analogy is flawed.

First of all, throughout the plaintiff's employment tenure, he acted as Mr. Woodward's

supervisor.  *See* Wang Aff. ¶ 4.  The court cannot conclude that the two are similarly situated, as

employees and supervisors necessarily possess different job functions and responsibilities.  *See*

*Martin v. Locke*, 659 F. Supp. 2d 140, 157 (D.D.C. 2009) (noting that an employee was not

similarly situated to her manager); *Laurent v. Bureau of Rehabilitation, Inc.*, 544 F. Supp. 2d 17,

23 (D.D.C. 2008) (noting that the plaintiff was not similarly situated to other employees because they were not supervisors).  Second, Mr. Woodward is not an apt comparator because the plaintiff was hired on a probationary basis.  Def.'s Mot., Ex. D ("Cook Aff.") ¶ 3 (noting that the plaintiff was in a one-year probationary status at the time he was fired); *McKenna v. Weinberger*, 729 F.2d 783, 789–90 (D.C. Cir. 1984) (concluding that probationary employees are not similarly situated to permanent employees).  Third, the record demonstrates that Woodward *was* punished for his tardiness; in fact, Ms. Wang chose not to hire Woodward as the Accounts Receivable Supervisor for this precise reason.[2]  Finally, the plaintiff alleges that other unnamed employees were late without suffering any adverse action, but he provides no evidence in support of his argument.  Pl.'s Opp'n at 3.  Absent any supporting evidence, the plaintiff's unsupported *ipse dixit* does not create a triable issue of fact.[3]  *Hagan v. State Farm Ins. Co.*, 1989 WL 17362, at *2 (D.D.C. Feb. 23, 1989).

The plaintiff also argues that his unfamiliarity with PeopleSoft is merely a pretext to disguise the employer's racial animus.  In particular, the plaintiff argues that Ms. Wang provided a co-worker with one-on-one training with the program, but that she did not do the same for the plaintiff.  *See* Pl.'s Opp'n at 5 (arguing that Shawn Brown, a black female, received one-on-one training with Ms. Wang).  Because Ms. Brown is also black, no reasonable jury could infer that

---

[2]     Even after the plaintiff was hired, Woodward continued to arrive late, and the plaintiff admits that Ms. Wang encouraged him to take action to prevent Woodward's tardiness.  *See* Pl.'s Opp'n at 3.

[3]     The defendant also maintains that Ms. Wang hired the plaintiff less than four months before firing him, and that she would not have done so if race played any significant role in her decision-making process.  *See Rand v. CF Indus.*, 42 F.3d 1139, 1147 (7th Cir. 1994) (where same decision-maker hired and fired plaintiff within span of two years, a jury could not draw an inference that he engaged in unlawful discrimination absent other specific evidence of discriminatory animus); *see Harris v. Group Health Ass'n, Inc.*, 662 F.2d 869, 872 (D.C. Cir. 1981) (when the plaintiff was hired and fired by the same person, this fact "at least raises the question, unanswered by appellant, of why a racially discriminatory organization or individual would have hired her in the first place").  But the plaintiff alleges that he was not Ms. Wang's first choice for the job, Compl. ¶ 8, and thus the defendant's argument is not dispositive.

Ms. Wang treated the two employees differently on the basis of their race.  Accordingly, the court will grant summary judgment on the plaintiff's racial discrimination claim.

### 4. Gender Discrimination

The plaintiff also claims that he was fired because of gender discrimination.  The defendant continues to argue that it terminated the plaintiff for his frequent tardiness and his unsatisfactory job performance.  Once again, the plaintiff has not demonstrated that a reasonable jury could conclude that these reasons are mere pretext.

The plaintiff has not submitted any evidence that could convince a reasonable juror that the plaintiff's tardiness was merely a pretext for gender discrimination.  The plaintiff does not even attempt to argue that tardy employees were treated differently on the basis of their gender. The plaintiff's only remaining argument, therefore, is his contention that Ms. Wang trained certain female coworkers in the use of PeopleSoft but did not do the same for the plaintiff.

On his resume and in his interview for the Accounts Receivable Supervisor position, the plaintiff claimed to possess significant experience with PeopleSoft, a software program that was regularly used by WMATA employees.  Def.'s Mot., Ex. B ¶ 5.  In his deposition, the plaintiff admitted that he did not know how to perform certain tasks with the program and that he had called his supervisor to ask for help.  *Id.*, Ex. E at 3 ("What happened was there were two journal entries in the PeopleSoft system . . . I called [Ms. Wang] on the phone and told her I didn't know how to actually delete those and if she could show me how to do it.").  The plaintiff argues that Ms. Wang bore the responsibility of providing him with training in the software program, and that Ms. Wang provided training for certain female employees but not for the plaintiff.

First of all, there is no particular reason to assume that Ms. Wang bore any personal obligation to train employees in the use of PeopleSoft.  In fact, the plaintiff admits that Ms. Wang lacked familiarity with the program.  Pl.'s Opp'n at 5 ("Ms. Wang did not know how the

application for Peoplesoft worked as it related to Accounts Receivable and therefore could not judge the Plaintiff's abilities."). In any event, the record shows that he received valuable training from two of his coworkers, Mr. Woodward and Ms. Li. *See* Def.'s Mot., Ex. E, Tr. 25–26 ("Jessie Li-Tien was a valuable resource that I could actually go to, to get information about understanding WMATA's account receivable and how the whole thing is put together."); *see id.*; (stating that Ms. Li "was pretty knowledgeable, so I relied on her to help me get up to speed."). The plaintiff nevertheless claims that he received less comprehensive PeopleSoft training than Shawn Brown, a female coworker. *See* Pl.'s Opp'n at 5 ("Ms. Wang on a number of occasions provided one-on-one training to Ms. Brown to ensure that she was fully acclimated to her job."); Def.'s Mot., Ex. E, at 37–38 ("With Ms. Brown, there were a number of occasions when I walked into Amy's office where I saw her interacting with Shawn Brown one-on-one. She always spoke to her respectfully. You know, she never actually spoke to her in a manner that was degrading, as how she spoke to me, all the time."). As a black female, Ms. Brown might superficially be deemed an apt comparator; nevertheless, the differences in their employment history render the plaintiff's comparison untenable. In particular, the plaintiff does not allege that Ms. Brown was frequently late,[4] so the two cannot be deemed "similarly situated" for the purposes of Title VII. *See Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (in proving a sex discrimination claim, the plaintiff must show that his or her employment history was "nearly identical" to that of the similarly situated employee). Because the two employees are not similarly situated, no reasonable juror could infer that they were treated differently on the basis of gender.

---

[4]       It does not appear that the plaintiff seeks her timeliness records as a part of his sanctions motion.

In sum, the plaintiff has submitted no evidence to suggest that the defendant's stated reasons for acting are simply a subterfuge to mask invidious discrimination. *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998); *Smith v. Jackson*, 539 F. Supp. 2d 116, 136 (D.D.C. 2008). In fact, the plaintiff concedes that the defendant's stated reasons are factually accurate. Instead, the plaintiff asserts—with little to no evidentiary basis—that he was treated unfairly or that his professional failings did not warrant his termination. Of course, Title VII is not a statutory invitation for the judiciary to micromanage an employer's personnel decisions. *See Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (concluding that Title VII does not permit a court to act as a "super-personnel department that reexamines an entity's business decisions").[5] Considering the totality of the evidence, the court concludes that no reasonable jury could find that the defendant's stated reasons for firing the plaintiff were merely pretext for discrimination on the basis of race or gender. Accordingly, the court will grant the defendant's motion for summary judgment.

## B. The Court Denies the Plaintiff's Motion for Sanctions

The plaintiff has filed a motion asking the court to sanction the defendant for its "willful spoliation of evidence." *See generally* Pl.'s Mot. for Sanctions. Specifically, the plaintiff argues that he is entitled to a default judgment because the defendant deleted certain automated records measuring other employees' attendance records. *Id.* at 1. The plaintiff insists that these records would have helped prove that he alone was punished for arriving late, and that his unique treatment was evidence of discrimination. *Id.* The defendant instead maintains that these records were automatically deleted in early 2009. Def.'s Opp'n at 3. Because the plaintiff's

---

[5]      For example, the plaintiff submitted an affidavit of Kathleen Smith, who supervised the Accounts Receivable office. *See* Pl.'s Opp'n at 41–43. She takes issue with Wang's management style and criticizes her performance as the plaintiff's manager, but she does not indicate that Ms. Wang's treatment of the plaintiff was in any way based on discrimination.

lawsuit was not filed until June 2010, the defendant argues, there was no reason to believe that these records would have been relevant to the present litigation. *Id.*

Once a party anticipates that it will be subject to litigation, the party has a duty to preserve any evidence that may be potentially relevant. *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1481 (D.C. Cir. 1995) (noting that a party to litigation has "an obligation to preserve and also not to alter documents it knew or reasonably should have known were relevant . . . if it knew the destruction or alteration of those documents would prejudice [its opponent]"); *D'Onofrio v. SFX Sports Group, Inc.*, 2010 WL 3324964, at *5 (D.D.C. Aug. 24, 2010); *see Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."). A party that fails to preserve evidence "runs the risk of being justly accused of spoliation"—defined as "the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation"—and find itself the subject of sanctions. *D'Onofrio*, 2010 WL 3324964, at *5 & n.5; *Smith v. Cafe Asia*, 246 F.R.D. 19, 21 n.2 (D.D.C. 2007). The authority to issue sanctions in this context does not stem from the Federal Rules of Civil Procedure, but flows instead from the court's inherent authority to manage its affairs so as to achieve the orderly and expeditious disposition of cases.[6] *Shepherd v. Am. Broad. Co.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995) ("As old as the judiciary itself, the inherent power enables courts to protect their institutional integrity and to guard against abuses of the judicial

---

[6] The plaintiff argues that sanctions may be also issued under Federal Rule of Civil Procedure 37, but this rule only allows a court to issue sanctions for violating discovery orders. *See* Fed. R. Civ. P. 37(b)(2). Because the information at issue here was purportedly deleted before this action was filed, Rule 37 does not apply. *Parsi v. Daioleslam*, 2012 WL 4017724, at *1 (D.D.C. Sept. 13, 2012); *see Shepard*, 62 F.3d at 1470 ("A production order is generally needed to trigger Rule 37(b).").

process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments."). Because these sanctions may be severe, the court must exercise its discretion with restraint. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991) (finding that the inherent authority of the court should be exercised only when an applicable rule or statute is "not up to the task").

Although the court has a wide array of options at its disposal, sanctions may be divided into two rough categories: (1) punitive or penal sanctions; and (2) issue-related sanctions. *See Shepherd*, 62 F.3d at 1478. Punitive or penal sanctions include dismissals, default judgments, contempt orders, and the imposition of fines. *Id.* Issue-related sanctions are targeted to remedy the precise evidentiary issue; for example, a party who fails to retain evidence may be precluded from introducing types of evidence, or the jury may draw an adverse inference from the missing evidence. *Id.* (citing *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 225 (7th Cir. 1992). Harsher sanctions should be issued "only after unfruitful resort to lesser sanctions." *Ripalda v. Am. Operations Corp.*, 977 F.2d 1464, 1466 (D.C. Cir. 1992). Thus, draconian sanctions such as a default judgment or dismissal "should be imposed only in the most severe of circumstances, and in general only after a resort to lesser sanctions have prove[n] ineffective." *United States ex rel. Miller v. Holzmann*, 2007 WL 781941, at *2 (D.D.C. Mar. 12, 2007).

The party seeking sanctions bears an evidentiary burden that is calibrated to "ensure that the gravity of the sanction corresponds to the misconduct." *Shepherd*, 62 F.3d at 1479. Thus, a party seeking an issue-related sanction need only put forth a preponderance of the evidence, but a party seeking a penal sanction must put forth clear and convincing evidence before sanctions are warranted. *Id.* at 1477–78. An issue-related sanction, such as an adverse inference, is warranted if:

> (1) the party having control over the evidence had an obligation to preserve it
> when it was destroyed or altered; (2) the destruction or loss was accompanied by a
> culpable state of mind; and (3) the evidence that was destroyed or altered was
> relevant to the claims or defenses of the party that sought the discovery of the
> spoliated evidence, to the extent that a reasonable factfinder could conclude that
> the lost evidence would have supported the claims or defense of the party that
> sought it.

*Mazloum v. D.C. Metro. Police Dep't*, 530 F. Supp. 2d 282, 291 (D.D.C. 2008).  A punitive

sanction—such as the default judgment requested by the plaintiff—is justified when:

> (1) the other party has been so prejudiced by the misconduct that it would be
> unfair to require [the party] to proceed further in the case; (2) the party's
> misconduct has put an intolerable burden on the court by requiring the court to
> modify its own docket and operations in order to accommodate the delay; or (3)
> the court finds it necessary to sanction conduct that is disrespectful to the court
> and to deter similar misconduct in the future.

*Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998) (quotation marks and citations

omitted).

The plaintiff first argues that the defendant should have retained attendance records for

one of his co-workers, Warren Woodward.  The defendant maintains that it did not have reason

to believe that Woodward's attendance records would have been relevant until the plaintiff filed

suit in 2010.  But the defendant also admits that it first retrieved a printout of the plaintiff's

attendance records in June 2008, soon after the plaintiff first filed a charge of discrimination with

the EEOC.  Def.'s Opp'n at 2.  The following month, the plaintiff sent a letter to the EEOC

indicating that he believed that Woodward was being treated differently on account of his race.

*See* Pl.'s Reply at 9.  In that letter, the plaintiff explicitly alleges that Woodward was often late

but was never punished.  *Id.*  By mid-2008, therefore, the defendant was on notice that

Woodward's attendance records would have been "potentially relevant" to the litigation.

*Shepherd*, 62 F.3d at 1481.  And even the negligent destruction of relevant evidence may warrant

issue-related sanctions.  *Chen v. District of Columbia*, 839 F. Supp. 2d 7, 12 (D.D.C. 2011).  But

as it turns out, both parties agree that Woodward was often late.  The parties simply disagree as

to what inference may be drawn from this fact.  Because there is no disagreement as to the facts,

any documents proving Woodward's tardiness would have been cumulative at best.  Thus,

evidence proving Woodward's tardiness would not have provided any support to the plaintiff's

discrimination claim.  *Cf. Mazloum*, 530 F. Supp. 2d at 291 (noting that issue-related sanctions

are justified when the destroyed evidence would have been relevant to the party's claim).

Because the court must exercise discretion and restraint in this area, *see Chen*, 839 F. Supp. 2d at

12, the court chooses not to sanction the defendant.  Because issue-related sanctions are

unwarranted, it follows that punitive sanctions should not be issued.  *See Shepherd*, 62 F.3d at

1477.

  The plaintiff also argues that the defendant should have retained the attendance records

for "other employees."  Pl.'s Mot for Sanctions at 1.  Again, the defendant contends that it had

no reason to believe that similar information would be needed for this litigation.  Once more, it

may have been prudent for the defendant to search for other employees' records to see if the

plaintiff was treated differently from his co-workers.  But the court chooses not to impose

sanctions for two reasons.  First: the plaintiff never gave any notice that he would base his claim

on other employees' attendance records.  Absent any such notice, it is difficult to conclude that

the defendant knew (or should have known) that these records would have been relevant.  *See*

*More v. Snow*, 480 F. Supp. 2d 257, 274–75 (D.D.C. 2007) (declining to impose sanctions when

it was unclear that the defendants had ever received a request for certain evidence that was later

destroyed).  Second: to this day, the plaintiff has never specified which employees' records

should have been preserved.  Without knowing whose records to preserve, or whether those

records would be sought by the plaintiff, the defendant could not have known that these records

would have been "potentially relevant." *See Shepherd*, 62 F.3d at 1481.  And if the defendant

had no reason to believe so, the defendant had no duty to preserve this evidence.  *See id*.

Accordingly, the court concludes that the plaintiff has not shown that any sanctions—whether

issue-related or punitive—are warranted.   The court will therefore deny the plaintiff's motion.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment

and denies the plaintiff's motion for sanctions.  An order consistent with this memorandum

opinion is separately issued this 14th day of November, 2012.

RUDOLPH CONTRERAS
United States District Judge